## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT OWENSBORO

GARY WAYNE JEFFRIES                                                                 PLAINTIFF

v.                                                    CIVIL ACTION NO. 4:13CV-P59-M

CHARLIE PAULIUS *et al.*                                                DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Gary Wayne Jeffries filed the instant *pro se* 28 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on initial review of the action pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will dismiss the action.

### I.

Plaintiff's allegations concern his incarceration at the Webster County Detention Center (WCDC). He has since been transferred to the Fulton County Detention Center. He sues Terry Elder, Jailer of WCDC; Charlie Paulius, whom he identifies as a doctor with "Advanced Corr. Healthcare, Inc./Webster Co. Detention Ctr."; Advanced Correctional Healthcare, Inc., which he identifies as the medical provider at WCDC; Sgt. Don Poe; Wilda Elder, RN; Capt. M. Vaughn; Sgt. Dale Spurling. Plaintiff sues each Defendant in his or her official and individual capacity.

Plaintiff states that on February 1, 2013, he complained of severe chest pain, and he filled out a medical request form. An officer took his blood pressure which was high. He avers that the officer said he was going to call the doctor but never returned. Plaintiff contends that he "laid in excruciating level 10 Pain all weekend until I seen nurse on Feb 5th and the doctor on the 7th of February." He states that he complained to the doctor about "numbness and nerve damage that was Plaguing my whole left side." He states that the doctor "basically refused to refer me to a outside physcan and prescribed me Indocin which didnt help the muscle damage or

numbness that persisted!" Plaintiff further states that his left arm was "totally immobile for 5 to 6 wk's and the nurses & doctor knew . . . ." Plaintiff further avers that on February 12, 2013, he lost consciousness and the doctor was called and "once again he refused for the guard's to call a ambulance and he okayed officer/Sgt Dale[1] to give me 2, 50 mg Visteril which he refused me on a earlier date." Plaintiff states that he "was placed in Medical watch until the Nurse Wilda said I passed out because I stood up to fast and I was sent back to my cell." Plaintiff further states, "I saw the doctor numerous times over the past month's each time complaining of muscle damage, pain, mobility loss, muscle spasms and more."

Plaintiff states that he "even filed a greviance on 4-13-13 after I broke my hand in an altercation and once again Dr. Paulice refused the sergeant from calling an ambulance and ordered an x-ray for an obviously broken hand." He reports that he had bones sticking out of the top of his hand. He states that he was rushed into emergency surgery on April 17, 2013.

Plaintiff states that he had a "history and physical" that was performed at the Jefferson County Jail seven days before he was transferred to WCDC, that "will show my medical status prior to these incidents."

Plaintiff claims that Defendants Paulius and Advanced Correctional Healthcare, Inc.[2] violated his Eighth Amendment rights by refusing him proper medical treatment during his incarceration at WCDC. He further states that Defendant Elder violated his Eighth Amendment

---

[1]The Court construes this allegation as against Defendant Sgt. Dale Spurling.

[2]In the second amended complaint, Plaintiff makes reference to Advanced Pharmaceuticals, Inc. For the reasons stated by separate Memorandum and Order entered this date, however, the Court construed the second amended complaint as seeking to replace Advanced Pharmaceuticals, Inc. with Advance Correctional Healthcare, Inc. as a Defendant to this action.

rights "by allowing them to treat me in this manner after I wrote a grievance that he did not answer." He states that he got a response from Defendant Vaughn "stating he had no idea what I was referring too."

Plaintiff further contends that he was seen by Defendant Paulius on May 23, 2013, and "was told he would refer me to an orthopedic surgeon for my nerve damage, which is obviously a problem that needs the care of a neurologist." He avers that he stated his opinion to Defendant Paulius and that Paulius told him "'it costs money for them to send you to a Doctor!' and refused my pain medication pending x-rays and readings." Plaintiff reports that Defendant Poe and non-defendant Deputy Dominique "were present as well."

Plaintiff goes on to state that on June 12, 2013, he was taken to Dr. Dodds's office and "he confirmed my opinion that I needed to be seen by a neurologist." Plaintiff avers that Dr. Dodds "wrote out a paper with suggestions for Dr. Paulius that I was refused a copy of my records by Officer Conway. I was told I had to wait to be released before I could receive a copy." Plaintiff further states that on July 10th he saw Dr. Paulius and "he finally OK'd my transfer to a state facility so I can get proper medical treatment."

Plaintiff further states, "This statement of claims is a basic overview of the violations I received . . . It does not include all incidents & acts of the clear violations of my 8th amendment rights . . . ." As relief, Plaintiff seeks compensatory and punitive damages and injunctive relief in the form of "getting proper medical treatment."

In a subsequent letter which the Court construed as a supplemental complaint, Plaintiff states that he was transferred to the Fulton County Detention Center but he was supposed to be transferred to the Kentucky State Reformatory to be seen by a neurologist. He states, "I know

3

they're malice is coming against me because of the suit that I've filed in your court and I only want to get the proper medical treatment before I have another stroke & end up paralyzed or worse!!"

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that

4

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

**A.  Denial of medical treatment**

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). In order for a claim to rise to the level of an Eighth Amendment violation, "a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837-38. Therefore, to prove a prison official is liable under the Eighth Amendment for denial of medical treatment, the prisoner must

first demonstrate the existence of a "sufficiently serious" medical need. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The prisoner must also demonstrate that the prison official subjectively possessed "'a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Farmer*, 511 U.S. at 834).

The Court construes the complaint as alleging deliberate indifference with respect to two separate medical needs – (1) Plaintiff's complaints concerning chest pain, numbness, nerve damage, mobility loss, and muscle spasms and (2) his injury to his hand following an altercation. The objective component of an Eighth Amendment deliberate-indifference claim requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). The objective component is governed by "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). For the purposes of initial review, the Court will presume that Plaintiff has stated facts concerning his medical needs which satisfy the objective component.

The Court must then determine if Plaintiff has stated facts to support the subjective component of a deliberate indifference claim, *i.e.*, "'a sufficiently culpable state of mind in denying medical care.'" *Miller v. Calhoun Cnty.*, 408 F.3d at 812 (quoting *Farmer*, 511 U.S. at 834). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9 (citations omitted). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). A court generally will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v.*

6

*Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996). Thus, a difference in medical judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or treatment is not enough to state a deliberate-indifference claim. *Ward v. Smith*, No. 95-6666, 1996 U.S. App. LEXIS 28322, at *2 (6th Cir. Oct. 29, 1996). In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court stated: "the question whether an X-ray -- or additional diagnostic techniques or forms of treatment -- is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment." *Id*. at 107.

Based on Plaintiff's own assertions in the complaint, Plaintiff received some medical treatment for his complaints of chest pain, numbness, nerve damage, mobility loss, and muscle spasms.[3] He states that he was seen by the doctor and medical staff concerning these conditions, received at least two prescriptions, was placed in medical watch, and had his blood pressure checked. In fact, Plaintiff states that he saw the doctor "numerous times" over a period of months for these conditions. He states that Defendant Paulius would not refer him to an outside doctor. However, such disagreement constitutes a dispute over the adequacy of treatment, which does not give rise to an Eighth Amendment deliberate-indifference claim. *Westlake*, 537 F.2d at 860 n.5. Prisoners are not entitled to "unqualified access to health care." *Hudson*, 503 U.S. at 8.

---

[3]The Court notes that Plaintiff stated in the supplemental complaint (DN 14) that he seeks medical attention "before I have another stroke." However, he does not allege in the complaint that he suffered a stroke while incarcerated at WCDC or at some time prior to his incarceration there.

While Plaintiff may disagree with the treatment offered, such disagreement does not amount to a constitutional claim.

With regard to the injury to Plaintiff's hand, Plaintiff states that he received an x-ray and had surgery on his hand. Therefore, any disagreement with the treatment he received is also a dispute as to its adequacy and does not give rise to an Eighth Amendment claim. *Westlake*, 537 F.2d at 860 n.5. To the extent that he would argue that the surgery was performed four days after his injury and that the delay in treatment was a constitutional violation, allegations of denial of medical treatment based on a delay in treatment are to be gauged by examining the effect of the delay in treatment. An "inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Here, Plaintiff alleges no detrimental effect of any delay in treatment for the injury to his hand.

Plaintiff also alleges that Defendant Paulius referred him to an orthopedic surgeon but refused his apparent request to see a neurologist. Moreover, Plaintiff states that he was seen by Dr. Dodds, who "confirmed [his] opinion" that he should be seen by a neurologist. Plaintiff does not state for what medical problem he believed he should see a neurologist, but the Court will presume that he wanted to see a neurologist for his history of stroke. Plaintiff does not state who Dr. Dodds is, but the Court presumes that he is an orthopedic surgeon. In any event, his dispute with his doctor over what type of specialist he should see and Dr. Dodds's opinion that he should see a neurologist amount to a disagreement over medical treatment which does not give rise to a constitutional claim of deliberate indifference. *See Durham*, 97 F.3d at 869. The Court will not "second guess [the] medical judgments" of Defendant Paulius. *See Westlake*, 537 F.2d at 860

n.5. Moreover, to the extent Plaintiff argues that non-Defendant Officer Conway refused to give him a copy of his medical record from Dr. Dodds, the medical record would not aid him in this claim since the claim will be dismissed for the reasons stated herein.

Furthermore, to the extent Plaintiff seeks proper medical treatment as injunctive relief in this action, his request became moot when he was transferred from WCDC. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding inmate's request for injunctive relief moot as he was no longer confined to the institution where the alleged wrongdoing occurred). Defendants no longer have any authority over what medical care Plaintiff receives since he is no longer incarcerated at WCDC.

Accordingly, Plaintiff's individual and official-capacity claims against Defendants Paulius, Advanced Correctional Healthcare, Inc., Poe, Elder, and Spurling alleging deliberate indifference to his serious medical needs will be dismissed for failure to state a claim upon which relief may be granted.

**B.     Grievance handling**

Plaintiff's only claims against Defendants Elder and Vaughn concern the handling of his grievances or their failure to act on them. However, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x

839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Moreover, the failure to act on a grievance likewise does not give rise to a § 1983 claim. *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same).

For these reasons, Plaintiff's § 1983 claims against Defendants Elder and Vaughn in their individual and official capacities will be dismissed for failure to state a claim upon which relief may be granted.

**C.  Retaliation and any other claims**

Plaintiff also alleges that he was transferred to the Fulton County Detention Center instead of the Kentucky State Reformatory. He states, "I know they're malice is coming against me because of the suit that I've filed in your court . . . ." To the extent that Plaintiff is alleging that he was not transferred to the Kentucky State Reformatory in retaliation for filing this action, he has not alleged which if any of the Defendants engaged in this conduct.

To state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which he complains. *See Rizzo*

*v. Goode*, 423 U.S. 362, 375-76 (1976).  While the Court is aware of its duty to construe *pro se* complaints liberally, Plaintiff is not absolved of his duty to comply with the Federal Rules of Civil Procedure by providing Defendants with "fair notice of the basis for his claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  Because Plaintiff fails to allege that any of the Defendants retaliated against him, the claim will be dismissed for failure to state a claim.

Additionally, Plaintiff states in the second amended complaint that the statement of claims "is a basic overview of the violations I received . . . It does not include all incidents & acts of the clear violations of my 8th amendment rights . . . ."  Any claims not included in the statement of claims and subsequent amendments obviously do not provide notice to Defendants of the basis of Plaintiff's claims and do not warrant consideration by the Court.

## IV.

For the foregoing reasons, the Court will dismiss the action by separate Order.

Date: October 22, 2013

*[signature]*
**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
     Defendants
4414.010

11